UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENIS WRIGHT,

                Plaintiff,            Case No. 06-13252

vs.                                HONORABLE JUDGE VICTORIA A. ROBERTS
                                    HONORABLE STEVEN D. PEPE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
=========================/

## Report and Recommendation

**I.     Background**

Denis Wright brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons noted below, it is recommended that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment be GRANTED and the case remanded for further proceedings concerning Plaintiff's RFC and his ability to perform his past work or any other substantial employment in the regional or national economy.

**A.     Procedural History**

Plaintiff filed an application for DIB and SSI on April 7, 2004, alleging disability due to gout, poor blood circulation, high blood pressure and pancreatitis, beginning September 5, 2003 (R. 12, 59, 67, 161). Plaintiff's claims were initially denied on September 29, 2004 (R. 164 & R.

161). An administrative hearing was held on July 12, 2005 before Administrative Law Judge ("ALJ"), Don Colpitts. Plaintiff was represented by attorney, William Watkinson, and Vocational Expert (VE) Elizabeth Pasikowski also testified (R. 169). On October 20, 2006, ALJ Colpitts issued an opinion denying Plaintiff's applications (R. 12-17). The Appeals Council denied Plaintiff's request for review on June 8, 2006 (Dkt. #1).

    B.    <u>Background Facts</u>

        1.    <u>Plaintiff Application & Testimony</u>

Plaintiff was born July 2, 1951, and was fifty four years old at the time of his hearing (R. 172-173). He completed high school with a graduate equivalent degree and has not completed any special job, trade or vocational training (R. 71). Plaintiff's past work experiences include working as an assembly line worker, laborer handling audio-visual materials and a dishwasher (R. 68, 197).

Plaintiff reported severe pain in his lower extremities, specifically he claims that he developed weakness, pain, falling, swelling and a skin rash, all of which combined TO prevent him from working as such since the onset of his ailments, he has not had any employment (R. 176). He sought treatment from September 2003 - November 2003 for his condition, during which time his employer terminated him resulting in cancellation of his medical insurance (R. 176). Without insurance, he no longer sought medical treatment until March of 2005, four months prior the hearing, when he once again received medical insurance (R. 179). During the no-insurance interim, he continued to have symptomology in his lower extremities that limited his activities to standing 10-15 minutes at a time, walking one city block, sitting with feet on the floor for an hour and lifting a maximum of 10 lbs, an amount estimated by him as illustrated by

2

his inability to mow his yard (R. 179-181). Plaintiff treated his pain with Celebrex, aspirin, Metryl, Indocin, codeine and elevating legs to reduce the swelling (R. 188-9).

Plaintiff also suffered from alcoholism consuming two fifths of alcohol a day until the year 2000 when he went for treatment (R. 193). He testified that he has not had a drink since that time. One of the residual effects of his drinking is pancreatitis, a condition that causes him pain in his stomach area wrapping around to his back (R. 184-5).

### 2. **Medical Evidence**

Plaintiff was seen by at Midwest Health Center for treatment of his lower extremeties from September 5, 2003, through November 22, 2003, while still under his prior employer's medical insurance policy. His initial appointment on September 5, 2003, for itching and irritation of his leg resulted with the physician noting that Plaintiff's legs were tender, swollen and discolored (R. 109). Three days later, on September 8, 2003, Plaintiff returned to the health center stating that he felt improved (R. 108). Plaintiff was referred to a vascular specialist for a venous Doppler study (R. 105, 107). The Doppler study, conducted on October 1, 2003, showed no evidence of deep vein thrombosis (R. 105). To help with his discomfort, plaintiff was prescribed support socks (R. 140). On October 31, 2003, Plaintiff returned to the health center for follow-up care (R. 102). The physician noted that Plaintiff smelled of alcohol and was told to stop drinking (R. 102). At his final visit to the health center, Plaintiff still had discoloration in his legs but ambulated well and without discomfort (R. 100).

Upon securing medical insurance in 2005, Plaintiff sought treatment for gout in his legs and hand pain (R. 145). Plaintiff was on medication for high blood pressure, but had run out of the medication three days earlier, and his blood pressure was 125/75 (R. 145 & 149) . On March 31, 2005, the treating physician at the Primary Care Center noted that Plaintiff walked with a

3

normal gait and there was no indication of tenderness, swelling or erythema of the lower extremities (R. 148). Because of the symptoms, Plaintiff was referred to Dr. John Iljas for a vascular evaluation (R. 155-59).

Dr. Elie Aboulafia performed a diagnostic arterial evaluation of the lower extremities on May 18, 2005, which resulted in no evidence of hemodynamic deficit at rest and no significant anatomical abnormalities involving either leg (R. 157). Dr. Iljas saw Plaintiff on May 10, 2005, for his lower extremity edema and pain for which he was "doing quite well" notwithstanding the pain and swelling and discoloration of both ankles (R. 158). Plaintiff was taking Tylenol with Codeine. He was diagnosed with bilateral mixed superficial and deep venous reflux of both lower extremities with venous stasis changes, notwithstanding his normal arterial exam. Several options were presented to the Plaintiff on May 25, 2005, after a duplex study in his legs which demonstrated bilateral varicose vein reflux (R. 156). One of which being an RF ablation of the right leg Plaintiff, after evaluating the benefits of the procedure as well as the alternatives, felt comfortable with the idea of proceeding with the ablation procedure (R. 156). But, the procedure has not taken place because Plaintiff lost his insurance coverage at work, and his state disability health insurance coverage from the Family Independence Agency has denied coverage of he procedure (R. 179). Plaintiff, who qualified for food stamps, cannot afford to pay the $7,000 procedure (R. 195-96).

On behalf of the Disability Determination Service, Dr. R. Matta evaluated the Plaintiff on July 15, 2004 (R. 134-138). Dr. Matta noted that Plaintiff walked with limp on his right side during the examination, in contrast to when Plaintiff entered the examination room walking unsupported and with no apparent distress (R. 134-135). Plaintiff was able to walk on his heels for five steps but not on his toes and never attempting tandem walking (R. 135).

Dr. Matta observed there to be swelling of both hands and fingers, skin changes and hyperpigmentation of the skin on both legs a result of Plaintiff's 20-year history of intravenous heroin use (R. 135). The Plaintiff also abused alcohol for the preceeding 15 years, consuming as "much as he could get" to the point of unconsciousness from excessive intoxication. A July 2004 report noted that Plaintiff was currently drinking "two fifths of alcohol daily," but at his hearing he said this 2004 statement referred to an earlier period before he quit drinking (R. 135 & R. 193-94). Dr. Matta concluded that Plaintiff suffered from chronic alcohol abuse and the skin discoloration on both legs was from previous injection drug use (R. 135). In that report Dr. Matta also noted Plaintiff walked with a limp to the right, used a cane and wore compression stockings on both legs.

### 3. <u>Vocational Evidence</u>

The Vocational testimony was short, consisting of fewer than 3 pages (R. 196-97, R. 198). VE Pasikowski testified that Plaintiff's past work could be categorized in different ways depending on the various descriptions presented as to the exertional requirements of the job. In his most recent job with M&H Industrials, Ltd. he noted the line work involved lifting one or two pounds, but cleaning up "trash and stuff" involved lifting up to 50-60 pounds (R. 174). At Plaintiff's prior job at Technicolor he loaded and unloaded videotapes onto a pallet, which involved 72 boxes weighing over 50 pounds , and pulled the pallet with a skid or pallet jack nearly a city block (R. 174 & R. 197-98). VE Pasikowski's testimony is a bit confusing. Apparently referring to the Technicolor job, because she refers to the dolly, she states

> 73 says 100 pounds. Testimony here today says 10 pounds, or less except for the using the dolly for videotapes. The last job would be considered unskilled and light. Working at – doing what he did at Technicolor, based on hearing about that job over and over it's unskilled medium. And as a dishwasher, its unskilled medium.

5

(R. 197).

It is totally unclear what "73 says 100 pounds." means. While the Work History Report begins in the record at page 73 of the record, there is no reference to 100 pounds for any of these jobs. (R. 73-78). The ALJ then asked Plaintiff some questions about the distance he pulled the dolly or skit of videotapes (R. 197-98). VE Pasikowski concluded her testimony stating simply:

> This is a job that's regularly testified to and it's unskilled medium. Based on –
> but her he's telling me, it on the scale of very heavy."

(R. 198).

Plaintiff's attorney did not ask any questions of the VE.

### 4. ALJ Colpitts's Decision

ALJ Colpitts found that Plaintiff met the insured status requirements of the Social Security Act through July 21, 2005, and that he had not engaged in substantial gainful activity at any time relevant to the decision (R. 16). ALJ Colpitts found that plaintiff had circulatory insufficiency of the lower extremities, but that he had no impairment or combination of impairments that met or equaled the criteria of the Listing of Impairments. In determining Plaintiff's residual functioning capacity , ALJ Colpitts accorded no weight to the state agency adjudicator because it was not a finding of made by a state agency medical consultant or other program physician under S.S.A. Redesign Prototype Program (R. 15 & R. 24). Instead, ALJ Colpitts considered the objective evidence in making his RFC determination and discrediting Plaintiff's subjective testimony finding it to be not fully credible (R. 15). The ALJ found that Plaintiff retained the residual functional capacity to lift/carry 20 pounds occasionally, sit, stand and/or walk 6 hours out of an 8 hour work day, "occasionally push/pull with both *upper* extremities; he is unlimited in his ability to push/pull with both *lower* extremities"(R. 16)(Emphasis supplied, see same statement on R. 15). Given that the medical evidence of record

involves primarily Plaintiff's lower extremities and not his arms, this was a peculiar REC finding.[1] Even more unusual was ALJ Colpitts characterization of the Vocational Expert's testimony. After summarizing her characterization of two Plaintiff's past three jobs as medium unskilled, except fo the "assembly line worker which was light unskilled work" he adds:

> The vocational expert was then asked whether a hypothetical individual with the same vocational profile and residual functional capacity as the claimant could perform as (sic, likely "any' was intended) of his past relevant work. The vocational expert testified that such an individual would be able to perform his past relevant work as an assembly line worker.
>
> The vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles (SSR 00-4p.)

There is no evidence in the record of the Vocational Expert testimony or elsewhere to support these last three sentences.Yet, apparently based on them in part, ALJ Colpitts found that Plaintiff's past job as an assembly line worker was not precluded by these limitations as testified to by the VE, and thus he found that Plaintiff remained able to perform his past relevant work, and was not disabled (R.17).

## II. Analysis

### A. <u>Standards of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

---

[1] Dr. Matta found swelling of both hands and fingers due to venous stasis from past history of injection drug use (R. 135)

7

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### B. <u>Factual Analysis</u>

In his motion for summary judgment, Plaintiff argued that (1) ALJ Colpitts erred in his residual functional capacity ("RFC") findings and (2) ALJ Colpitts erred in finding that Plaintiff could perform his past relevant work as an assembly line worker (Dkt. #14).

#### 1. *Plaintiff's RFC*

Plaintiff argues that ALJ Colpitts erred in forming Plaintiff's residual functional capacity ("RFC") by failing to properly consider all the medical evidence in the record or not accepting Plaintiff's testimony. Defense counsel stress the many negative findings of no deep vein thrombosis, no hemodynamic deficit and no significant anatomical abnormalities of the lower extremities and a normal x-ray of the right knee. Counsel argues these would not preclude a range of light work.

Subjective evidence fro a claimant is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). Yet, here while the evidence is far from overwhelming, there is nonetheless evidence of an under underlying medical condition explaining plaintiff's problems with his legs. He was diagnosed with bilateral mixed superficial and deep venous reflux of both lower extremities with venous stasis changes.

The record demonstrates that he uses Tylenol with Codeine, compression stockings and a cane on occasion. Even Dr. Matta noted Plaintiff walked with a limp on the right. ALJ Colpitts found these conditions severe under the regulations and Plaintiff has had RF ablation recommended as treatment which had not yet been approved by his limited state provided health insurance.

The Commissioner also argues that issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), and RFC is a subject reserved to the Commissioner under 20 CFR 404.1527(d)(2) and 416.927(d)(2).

Yet, in 20 C.F.R. 404.1513(b) &(c) and SSR 96-5p the Commissioner distinguishes between a treating source "statement about what [a claimant] can still do despite . . . impairment(s)" and the formal administrative finding on "residual functional capacity". The former is a physician's opinion on either physical or psychological capacities for work related activities. When based on the medical source's records, clinical and laboratory findings, and examinations it can be considered a "medical opinion" under 20 C.F.R. § 404.1527(a)(2) because "what [ a claimant] can still do despite impairment(s)" and "physical or mental restrictions" are medical judgments about the nature and severity of [a claimant's] impairment(s)" and thus fall within the Commissioner's definition of "medical opinion." Yet, because these medical opinions are different from the formal findings under § 404.1527(e) on "disability" and on "residual functional capacity" -- which are subjects reserved to the Commissioner and which may be based on additional evidence in the record  -- the

Commissioner ordinarily need not defer to the treating source opinion.  While that is far from the case here, the ALJ's determination must, nonetheless,  be based on substantial evidence.

Plaintiff has no medical opinions from treating sources concerning his RFC. But neither is there any such report in the record supporting the Commissioner. This case involved an initial decision under S.S.A. Redesign Prototype Program  that did not use a state agency medical consultant or other program physician as the decision maker in the initial consideration.  Had that occurred that determination and findings by a medical source would be treated as evidence before the ALJ.  Nor did the ALJ have a medical consultant examine Plaintiff and complete a form on residual capacities nor have a medical advisor testify at the hearing on this issue.

This is not a case where Plaintiff has absolutely no support for his claims. Plaintiff has evidence of an underling medical condition that would explain his testimony about his lower extremity limitations.  Thus, to find Plaintiff has a RFC to perform his past light exertional work, there must be sufficient reason to discount Plaintiff's credibility or there must be some other substantial evidence that Plaintiff can perform his past work.         ALJ Colpitts does discount Plaintiff's credibility concerning his ability to stand and  walk for certain periods of time consistent with light work. Yet, in order for an ALJ to properly discredited a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons [2]   The Commissioner's regulations specifically state:

---

[2] 42 U.S.C. § 405(b) states that
(1) The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

*Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996) "construed 42 U.S.C. § 405(b)(1)

> We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

20 C.F.R. § 404.1529(c)(2); *See also* 20 C.F.R. § 416.929(c)(2).

S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.[3] The ALJ must say more than the testimony is not credible. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount

---

as *requiring* an ALJ 'to discuss the evidence and explain why he found that [a claimant] was not disabled at step three.' *Id.* at 1009. . . . . *Clifton* sought . . . to ensure sufficient development of the administrative record and explanation of findings to permit meaningful review. *Clifton* set aside an ALJ's determination because the ALJ 'merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment,' without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning. *Id.* at 1009. The Court concluded '[s]uch a bare conclusion is beyond meaningful judicial review' ".).

> [3] S.S.R. 96-7p on Evaluating Symptoms in Disability Claims notes that:
> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Other cases apply this requirement of specific findings not only at step 5 but also at earlier steps in the sequential evaluation. See e.g *Clifton v. Chater, supra,* and *Jones v. Barnhart*, 364 F.3d 501, 504-505 (3d Cir. 2004) ("[I]n *Burnett v. Commissioner of Social Security Administration* we required 'the ALJ to set forth the reasons for his decision,' and held that the ALJ's bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment was insufficient. 220 F.3d 112, 119-20 (3d Cir. 2000).

11

the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id.* at 1039.

ALJ Colpitts does nothing more than that. He states the legal standard for RFC and the criteria for evaluating it in 20 C,F,R, §§ 404.1529 and 416.929, as well as in SSR 96-7P. While lack of objective medical evidence is a factor an ALJ may consider, the ALJ must analyze other reasons for discounting a claimant's credibility in addition to lack of objective medical evidence. The ALJ says he discounts Plaintiff's credibility "for the reasons set forth in the body of the decision" (R. 16). Yet, a review of the decision discloses no adequate credibility analysis and reasons to discount Plaintiff's credibility. After correctly stating the legal standards, ALJ Colpitts concludes "[the] overwhelming weight of the objective evidence demonstrates that the claimant's allegations . . . . [are] not entirely credible considering the criteria set forth in the Social Security Rulings." (R. 15.) After noting there is no medical opinion from a state agency medical consultant on RFC, ALJ Colpitts concludes Plaintiff can "lift/carry twenty pouds occasionaly; . . . Sit, stand, and/or walk for about six hours out of an eight-hour workday" and "occasionally push/pull with both upper extremities; he is unlimited in his ability to push/pull with both lower extremities"(R. 16).

This is conclusory in the extreme; it is a clear violation of SSR 96-7p's requirement of specific findings, of 20 C.F.R. § 404.1529(c)(2)'s requirement of more than lack of objective evidence, and of the warnings of *Felisky.*. In addition, there is also no substantial evidence that Plaintiff is "unlimited in his ability to push/pull with both lower extremities" given his severe lower extremity impairment.

2. **Plaintiff's Past Relevant Work**

Plaintiff claims that the ALJ erroneously determined that the Plaintiff could perform his past work as an assembly line worker based on the VE's response to the ALJ's hypothetical question. The Commissioner asserts that vocational expert testimony is not required for a finding at step four of the sequential evaluation, citing *Parker v. Secretary of HHS*, 1991 WL 100547, at *3 (6th Cir. June 11, 1991), citing *Smith v. Secretary of HHS,* 893 F.2d 106, 110 (6th Cir. 1998). The language in *Parker* is clearly *dicta* and not holding, and its citation to *Smith* does not say or stand for the proposition asserted because in *Smith* a VE did testify that Plaintiff's past job could be performed at the sedentary as well as at the light level, which testimony was relied on by the ALJ in denying benefits at step four. Nonetheless, while vocational evidence can be used at step four, it is only essential at step five when the burden has shifted to the Commissioner and if the Commissioner cannot rely on the grid to direct a finding of non-disability. Yet, even if the ALJ is not required to rely on VE testimony at step four, this is not license to make up vocational testimony to find against a claimant at step 4. This misstatement of the record cannot serve as substantial evidence to uphold a finding that Plaintiff can perform his past job.

Nor can it be argued that the procedural and factual errors in the record are harmless.[4] The requirements of SSR 96-7p are significant procedural protections for applicants as is the statutory rule requiring substantial evidence to uphold ALJ findings. *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 454 (6th Cir. 2004), noted that a federal agency is obliged to abide by the regulations it promulgates and:

> a court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record [to uphold the ALJ decision] and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.' *Mazaleski v. Treusdell,* 562 F.2d 701, 719 n. 41[(D.C. Cir 1977)]; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs,* 102 F.3d 1385, 1390 (5th Cir.1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [the regulation]), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency

---

[4] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (citing *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996)) ("But *Clifton* did not categorically reject the application of harmless error analysis in the present context. To be sure, we apply harmless error analysis cautiously in the administrative review setting. But as we explained in *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir.2004), harmless error analysis 'nevertheless may be appropriate to supply a missing dispositive finding ... where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.' ").

In *Fischer-Ross*, the ALJ's failure to provide more than summary conclusion that social security disability claimant did not meet the criteria of any listed impairment, at step three of the disability analysis, was harmless error because the ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.

*Neal ex rel. Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005) ("Harmless error analysis may be appropriate to supply a missing dispositive finding in a social security disability proceeding, where, based on material the ALJ considered, the court can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.")

14

> action ... found to be ... without observance of procedure required by law.'
> Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).[5]

*Id.* at 546.

It cannot be said that no reasonable administrative fact finder, following the correct analysis procedures at step four, could have resolved the factual matter in any other way than to conclude that Plaintiff could perform his past relevant work. Thus, it cannot be said the errors under SSR 96-7p and the incorrect statement concerning the questions and responses of the vocational expert are harmless. Indeed, these errors are so clear from the record, and the latter mischaracterization of testimony so significant a departure from a fair process, that it is surprising that the counsel for the Commissioner did not stipulate to a remand.

## IV.  Recommendation

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment be GRANTED and the case remanded for further proceedings concerning Plaintiff's RFC and his ability to perform his past work or any other substantial employment in the regional or national economy. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

---

[5] *Wilson*, 378 F.3d at 549 states that "We need not decide whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations", but then suggests its answer in a footnote: "According to a regulation, Social Security Rulings 'represent precedent final opinions and orders and statements of policy and interpretations' adopted by the Social Security Administration and 'are binding on all components of the Social Security Administration.' 20 C.F.R. §402.35(b)(1) (2004); *see also Sykes v. Apfel,* 228 F.3d 259, 271 (3d Cir. 2000)."

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 31, 2007  s/Steven D. Pepe
Ann Arbor, Michigan  United States Magistrate Judge

CERTIFICATE OF SERVICE

I hereby certify that on October 31. 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: James A. Brunson, Lisa M. Watkinson, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606

                                                s/James P. Peltier
                                                Courtroom Deputy Clerk
                                                U.S. District Court
                                                600 Church St.
                                                Flint, MI 48502
                                                810-341-7850
                                                pete_peltier@mied.uscourts.gov